IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

JIAFAN CHEN,

Plaintiffs,

v.

PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

Defendants.

Case No. 1:25-cv-09099-RA-BCM

Judge: Hon. Ronnie Abrams
Magistrate Judge: Hon. Barbara C. Moses

**PROPOSED SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' REQUEST FOR SANCTION AND FOR OTHER APPROPRIATE RELIEF**

Defendants CKductpro-US, daan-us, Flgocex, Ganggend, Granarbol, joygo-us, KONLU, KW Home&Garden, QGUO-US, and SVLVHOOL ("Defendants") submit this limited supplement based on WeChat communications produced by Jian Wang ("Exhibit A"). The communications show that, before Wang appeared as counsel for Plaintiff Jiafan Chen in this action, he discussed potential representation of defendants with a representative concerning the same case, Case No. 1:25-cv-09099 and/or response to the appeal to the Second Circuit Court by Wang's co-counsel Nitin Kaushik.

The messages are not merely an inquiry about Wang's general availability. They identify the case number, discuss the denial of Plaintiff's preliminary-injunction motion, address procedural and service issues—including the Hague Service Convention—and consider how defendants might respond to Plaintiff's appeal. Wang also discussed a proposed fee for the appellate work, and the participants negotiated the scope and price of a possible engagement. Wang also learned that Defendants are in bad financial shape and are susceptible to vexatious litigation tactics.

Defendants recognize that these discussions may establish every element required for disqualification. Rule 1.18(c) requires that the lawyer receive information from a prospective client that could be significantly harmful to that person in the same or a substantially related matter. Defendants therefore request a focused inquiry into the following two issues:

1. what attorney Wang learned about lack of resources of the defendants and their defendants' susceptibility to vexatious litigation and whether Wang gained an unfair advantage for the Plaintiff in the same case with the win by attrition strategy;
2. whether Wang used the discussion with the defendants on Hague convention to help devise an unlawfully way to deliver summons and complaint to defendants' attorney.

Plaintiff and Mr. Kaushik pursued the appeal. The representative was exploring Wang's potential retention to respond to Mr. Kaushik's appeal and Wang, after gaining information adverse to the Defendants, became co-counsel of Mr. Kaushik in this case for the Plaintiff.

## I. THE WECHAT COMMUNICATIONS DOCUMENT A CASE-SPECIFIC CONSULTATION

The 10-page WeChat PDF produced by Wang, together with the English Translation, is attached as Exhibit A. On page 1, the conversation identifies the action as "25-cv-09099." The participants discuss the denial of Plaintiff's preliminary-injunction motion and ask whether the ruling rested on procedural or substantive grounds. On page 2, the discussion turns to what Plaintiff's appeal challenged and whether the appeal concerned procedural or substantive issues. (Ex. A at 1–2.)

Pages 4–7 contain substantive discussion of the procedural posture, including the Hague Convention service issue, the TRO and preliminary-injunction proceedings, default, and possible consequences for the district-court action. Wang discusses whether service was effective and the implications of the service issue for the case. (Ex. A at 4–7.)

The participants also discuss the scope and cost of potential representation. On pages 8–10, Wang states that the appellate portion would cost approximately $18,000; the representative proposes $6,000 for the appeal portion and later raises a $10,000 flat fee. Wang states that he cannot undertake the matter for that amount, gives $18,000 as his proposed figure, and later discusses $15,000. The representative responds that the $15,000 proposal will be considered. (Ex. A at 8–10.)

These messages support the conclusion that Wang was consulted about possible representation in this specific action and that the discussions progressed to substantive case analysis and fee negotiations as well gaining information about the Defendants' lack of financial resources.

## II. RULE 1.18 REQUIRES EXAMINATION OF WHAT WANG RECEIVED FROM THE PROSPECTIVE CLIENT

New York Rule of Professional Conduct 1.18(a) defines a prospective client as a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter. Rule 1.18(b) restricts the lawyer's use or disclosure of information learned in the consultation, even if no client-lawyer relationship ensues. Under Rule 1.18(c), a lawyer who has received information from a prospective client that could be significantly harmful to that person in the matter may not represent another person with materially adverse interests in the same or a substantially related matter, subject to Rule 1.18(d).

The absence of a signed retainer or completed fee agreement does not resolve whether the consultation created prospective-client duties. Defendants' representative consulted Wang in good faith about potential representation and Wang was never authorized to use any information during the discussion to represent the defendants to be used for their detriment.

## III. THE SUBSEQUENT REPRESENTATION IS MATERIALLY ADVERSE AND INVOLVES THE SAME ACTION

The WeChat communications concern the same case in which Wang later appeared as counsel for Plaintiff Jiafan Chen. Plaintiff and defendants are directly adverse parties. The subject matter of the consultation on service, the preliminary-injunction proceedings, the appeal, and defendants' potential response, is part of the same litigation, not an unrelated transaction.

The record demonstrates Wang's violation of Rule 1.18, i.e., a consultation about potential representation of defendants in this action, followed by Wang's appearance for the opposing party in that same action. The information received during the consultation on defendants' susceptibility to vexatious litigation and on Hague service turned out to be significantly harmful Defendants and none of the exceptions under Rule 1.18(d) applies.

The information concerning defendants' financial and litigation resources is particularly sensitive. If, during the consultation, the defendants' representative disclosed a constrained litigation budget, or limited capacity to sustain extended proceedings, that information could materially affect how opposing counsel evaluates settlement pressure, motion practice, discovery burdens, and the duration and cost of the litigation. It is not merely background information: it concerns defendants' practical ability to continue defending this action.

Defendants contend that Wang acquired knowledge of these resource constraints during the consultation and fee negotiation. Defendants further contend that, after appearing for Plaintiff, Wang used—or was positioned to use—that knowledge to Plaintiff's advantage by pursuing a course that would increase the duration and expense of the litigation and thereby place pressure on defendants to capitulate through attrition. Defendants characterize this as demonstrating Wang's bad faith in his vexatious litigation tactics.

The alleged advantage is concrete. Knowledge of a party's financial limits can inform an adversary's assessment of how long that party can fund counsel, respond to discovery, oppose applications, and withstand continued litigation costs. Wang learned such information while defendants were considering retaining him, Rule 1.18(b)'s continuing restriction on use of information learned in the consultation is implicated even if no engagement followed. Because the information has been significantly harmful to Defendants and the other requirements of Rule 1.18(c) are met, Wang's materially adverse representation in the same action raises the disqualification issue squarely.

The Court should find that Wang received specific, nonpublic information about defendants' financial capacity or litigation tolerance and Wang's subsequent representation creates the prohibited risk under Rule 1.18.

## IV. THE PRIOR CONSULTATION IS RELEVANT TO THE MOTIVE AND PRACTICAL EFFECT OF THE CONDUCT ALLEGED IN DEFENDANTS' SANCTIONS MOTION

Defendants' pending sanctions motion (Dkt. 65) alleges a sequence of service-related conduct that, in Defendants' view, was not an isolated procedural error: the April 24, 2026 Order required service of specified unredacted papers and proof of service by May 1; Defendants challenged service and filed a Rule 12(b)(5) motion; on June 14, defense counsel expressly advised Plaintiff's counsel that Defendants had not authorized him to accept service; and Plaintiff later filed a return reporting service through defense counsel on October 13, 2026. Defendants contend that the return characterized the event as an authorized acceptance despite the earlier express notice and that the reported date was then used to trigger case-management obligations. Dkt. 65 at 1–6. These are allegations in the pending motion, not findings already made by the Court.

The prior consultation with Wang may bear on the context and motive for the conduct alleged in Dkt. 65. If Wang learned during the consultation that defendants had limited financial resources, a constrained litigation budget, or limited ability to sustain prolonged proceedings, that information could have informed an adversary's assessment of the pressure that continued litigation expense would impose. Defendants contend that the alleged course of conduct—including disputed service activity and procedural steps that required additional motion practice—had the practical effect of prolonging the litigation and increasing the cost of defending it. In that context, the information allegedly disclosed to Wang could have been materially useful to Plaintiff in pursuing a strategy of attrition.

Defendants do not ask the Court to treat the existence of the sanctions motion, the disputed service return, or the length of the litigation as independent proof that Wang acted in bad faith. Nor do the WeChat messages alone establish that Wang directed or caused the conduct challenged in Dkt. 65. The point is narrower: if Wang received nonpublic information about defendants' financial capacity and litigation tolerance while considering their representation, that information may be relevant to whether his subsequent materially adverse representation created a prohibited risk under Rule 1.18 and whether the litigation conduct identified in Dkt. 65 should be examined in that context.

Accordingly, Defendants request that the Court consider the chronology in Dkt. 65 together with the prior consultation when evaluating the need for a focused Rule 1.18 inquiry. The Defendants respectfully submit that Wang's use of information learned during the consultation demonstrate his bad faith in prolonging the litigation.

## V. THE COURT SHOULD REQUIRE A LIMITED RESPONSE AND PRESERVE THE ISSUE

Defendants request that Wang be directed to provide a declaration or other response limited to the following matters, without requiring disclosure of information protected by a valid privilege:

1. whether he communicated with the defendants' representative concerning potential representation in Case No. 1:25-cv-09099;
2. the dates, participants, and general subject matters of the consultation;
3. whether he reviewed pleadings, court orders, appellate papers, evidence, or other nonpublic materials supplied in connection with the proposed representation;

   whether, after appearing for Plaintiff, he participated in or advised on the service-related conduct challenged in Defendants' sanctions motion, including the October 13, 2026 purported service through defense counsel;
4. whether the consultation included information supplied by the representative that was not already publicly available in the court record;
5. the substance of any information communicated about defendants' financial resources, litigation budget, ability to fund prolonged proceedings, or settlement tolerance;
6. whether Wang communicated nonpublic information to attorney Nitin Kaushik;
7. whether Wang contends that Rule 1.18(d) applies and, if so, which exception he invokes and the nonprivileged facts supporting it; and
8. whether he has preserved the complete communications and associated attachments and voice messages in his possession.

The WeChat PDF produced by Wang contains 10 pages with truncation at the end. Defendants reserve the right to request full disclosure of all communications. To the extent completeness is material, Defendants request that Wang confirm whether additional communications, voice messages, transcripts, or attachments concerning the consultation exist and have been preserved.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court:

(1) grant leave to file this limited supplemental submission and Exhibit A as additional evidence to support the Sanction Motion;

(2) direct Wang to respond to the limited factual questions identified above;

(3) determine whether Wang's prior consultation triggers Rule 1.18(c) and whether an exception under Rule 1.18(d) applies; and

(4) if the requirements for disqualification are established, disqualify Wang from representing Plaintiff in this action, together with such further relief as the Court deems just and proper.

Dated: November 12, 2026

Respectfully submitted,

/s/ Lance Liu
Lance Liu, Esq.
Counsel of Record for Defendants
15 Minuteman Circle
Southbury, CT 06488
lanceliu2000@gmail.com
(203) 706-9536

**Certificate of Service**

I hereby certify that on November 12, 2026, a copy of the foregoing document was filed electronically through the Court's CM/ECF NextGen system with notice of filing automatically sent electronically to counsel of record.

/s/lance liu

BY: Lance Liu, Esq.
15 Minuteman Circle
Southbury, CT 06488
Email: lanceliu2000@gmail.com
Phone: (203)706-9536